UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **LISA ANN BEALS, on behalf of herself and others similarly situated**, <br><br> Plaintiff, <br><br> v. <br><br> **FRANCISCAN VNS HOME CARE, INC.,** <br> Defendant. | Class Action Complaint <br><br><br> Cause No. 1:23-CV-00137-MPB-MG <br><br> FLSA Collective Action Complaint Under 29 U.S.C. § 216(b) |

***UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS COUNSEL'S ATTORNEY'S FEES AND CLASS REPRESENTATIVE PAYMENTS***

*I.   BACKGROUND*

The Plaintiff Class, led by class representative Lisa Ann Beals (hereinafter "Beals"), negotiated a complete settlement of all claims in their combined Rule 23 class action and FLSA collective action with the Defendants Franciscan VNS ("Franciscan VNS") on March 15, 2024. The Court granted preliminarily approval of that class and collective action settlement on July 24, 2024 and set this matter for hearing on final approval for December 12, 2024 [Docket No. 79]. As part of that order, the Court directed Class Counsel to file with the Court no later than fourteen (14) days before the final approval hearing any request for the Class Representative Payments and Class Counsel Fees and Expenses Payment. [Docket No. 79`, ¶ 14] Pursuant to the Settlement Agreement and as presented in the Plaintiff's contemporaneously filed Motion for Final Approval of Class Settlement [Docket No. 82], Beals and Class Counsel seek a Class Representative Payment of $20,000 to Beals and attorney's fees and expenses to Class Counsel totaling

1

$1,216,666.67 ($1,216,666.67 in attorney's fees and $0 in expenses)[1]. These requests are unopposed by Defendant. Notice of Class Counsel's request for attorney's fees in the sum of $1,216,666.67 was mailed to each Class Member, as well as notice of the $20,000 Class Representative Payment to Beals. [Docket No. 78-1; Docket No. 80-1] To date, no one has filed an objection to Class Counsel's request for attorney's fees or the Class Representative Payment. [Exhibit 1 attached hereto, Hunt Declaration ¶¶ 21 - 22]

Prior to this litigation, Beals signed an individual contingent fee agreement with Class Counsel. [Hunt Declaration, ¶ 16] Beals agreed that any fee obtained by Class Counsel and his firm for work performed would be contingent upon success in the class litigation and would be 1/3rd of the gross amount collected in the case. [Id.] Class Counsel is requesting one-third of the gross amount of $3,650,000.00 (or $1,216,666.67). [Hunt Declaration, ¶ 18] This request for fees is consistent with Class Counsel's agreement with Beals. Also pursuant to the contingent fee agreement, Class Counsel is entitled to reimbursement of its expenses, but is not seeking reimbursement of those expenses. [Hunt Declaration, ¶¶ 16 - 19]

Respectfully, Class Counsel would state that his law firm's efforts have been without compensation to this date and that, at all times, his law firm's entitlement to payment has been wholly contingent upon the result achieved. Class Counsel would argue that his work with Franciscan VNS' counsel to settle this class action has preserved judicial resources and benefitted the class as a whole, making the requested fee reasonable.

II.     **THE CLASS REPRESENTATIVE PAYMENTS ARE REASONABLE AND WARRANTED**

"Service or incentive awards serve the important purpose of compensating plaintiffs for

---

[1] Class Counsel incurred approximately $3,000.00 in expenses in this Action, but is waiving them and does not seek reimbursement of those costs.

the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Knox v. Jones Group*, 2017 WL 3834929 *2 (S.D. Ind. Aug. 31, 2017) (citations omitted). See also *Espenscheid v. DirecSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing the importance of incentive awards). "Accordingly, incentive awards are commonly awarded to those who serve the interests of the class." *Knox*, 2017 WL 3834929, at *2, citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases). "In examining the reasonableness of the requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Knox*, 2017 WL 3834929 at *2, citing *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727 *16 (N.D. Ill. Feb. 28, 2012).

  This $3,650,000.00 class settlement would not have been possible without the Beals. Beals has been actively involved in this litigation for more than 22 months. [See Docket No. 1, Complaint, file February January 23, 2023] Beals provided documents and information to Class Counsel, reviewed documents, dedicated substantial time to this case, including participating in the settlement conference with the Magistrate Judge and the subsequent day-long mediation with the private mediator, and faced the risk of a cost award against her. The $20,000 service awards agreed to by the parties and preliminarily approved by the Court are well within the realm of reasonableness of similar service awards within our Circuit. (See Order, *Trevino III, et al. v. Bremen Castings, Inc.,* Case No. 3:18-cv-00271 (N.D. Ind. Oct. 15, 2019) (Docket No. 55), approving $15,000 representative payments to plaintiffs from a gross settlement amount of

$315,000; Order, *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind. May 9, 2017) (Docket No. 31), approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000; and Entry Approving Settlement Agreement, *Bridgewater and Van Ness II, et al. v. Jadcore, LLC*, Case No. 2:16-cv-00060-WTL-DLP (S.D. Ind. June 7, 2019) (Docket No. 138), approving $10,000.00 representative payments to plaintiffs from a gross settlement amount of $351,296.92.)

Finally, courts regularly approve incentive awards paid from the common fund. See *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015). Plaintiff's request final approval of the Class Representative Payment to Ms. Beals.

### III. CLASS COUNSEL'S ATTORNEYS' FEE REQUEST

#### A. THE PERCENTAGE METHOD IS THE PREFERRED METHOD FOR AWARDING ATTORNEYS' FEES IN COMMON FUND SETTLEMENTS IN THE SEVENTH CIRCUIT.

The Court should award attorneys' fees as a percentage of the total fund made available to the Class. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of a common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) [quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988); *Kaplan v. Houlihan Smith & Co.*, 2014 WL 2808801 *3 (N.D. Ill. June 20, 2014)] (approving distribution of settlement proceeds on a *pro rata* basis amongst class members); *see also Boeing*, 444 U.S. at 478 ("spreading fees proportionately among those benefited by the suit.").

4

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) – the trend in the Seventh Circuit is to use the percentage of the fund method in common fund cases where a settlement has been reached, like this one. *See McCue v. MB Financial, Inc.*, 2015 WL 4522564 *3 (N.D. Ill. July 23, 2015); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (approving award of 30% of the settlement proceeds, plus expenses); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement).

Fees based upon a percentage of a common fund in the settlement context are contrasted with fees based upon the lodestar method after an actual judgment is obtained. Compare *McCue*, 2015 WL 4522564 at *3 to *Pierce v. Visteon Corp.*, 791 F.3d 782, 786-788 (7th Cir. 2015). In this case, Class Counsel has contracts with his clients providing for a percentage-based contingent fee. *Pierce*, 791 F.3d at 787 ("we do not see why, *in the absence of a contract*, counsel should be entitled to money from the class on top of or in lieu of payment by the losing litigant.") (emphasis added). Additionally, Class Counsel's contingent fee is not paid "on top of" a fee based upon a lodestar figure. *Id*. It is the only fee. Finally, Class Counsel's fee is not being paid by a "losing litigant." *Id*. This is a settlement.

Class Counsel fees in the *McCue* case were awarded just a few weeks after the Seventh Circuit's *Pierce* opinion was issued. In *McCue*, the Court determined that the decision in *Pierce* did not preclude an attorney's fee based upon a percentage of the common fund in the settlement context. *McCue*, 2015 WL 4522564 at *3.

> "*Pierce's* holding is limited to cases where an attorney obtains a judgment for the class, the attorney is awarded a fee based on the lodestar method that the court deems reasonable, and the attorney seeks an additional, second recovery. That situation does not apply to this

settlement. Here, because Plaintiff is not a prevailing party, Class Counsel should be awarded a portion of the common fund that Class Counsel's work created. See *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fees from the fund as a whole.") (collecting cases); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 564-566 (7th Cir. 1994) ("common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund.").

Awarding attorneys' fees through a percentage of the common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a larger fee. See *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) (explaining benefits of the percentage of fund method are that if 'class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves.")." *Id*.

It is especially appropriate to use a common fund approach to the fee award in cases based on fee-shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . ." *Skelton*, 860 F.2d at 256; *Florin*, 34 F.3d at 564. Here, the settlement fund has been created in exchange for the release of Plaintiff's and Class Members' claims under the FLSA [see 29 USC §216(b)] and Indiana wage statutes [see I.C. 22-2-5-2], both for damages and statutory attorneys' fees.

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiff's lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) (explaining that the percentage of fund method is desirable because if "class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves"). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill 1996), *aff'd*, 160 F.3d 361 (7th

Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation ... a fee based on a percentage of recovery… tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 [citing *Hensley v. Eckerhart*, 461 U.S. 424, 43 (1983) (fee requests "should not result in a second major litigation")]. District Courts within our Seventh Circuit routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g., In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion."); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Court of Appeals for the Second Circuit has stated, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000).

**B.  THE MARKET PRICE FOR LEGAL SERVICES SUPPORTS PLAINTIFF'S MOTION FOR ATTORNEYS' FEES.**

"In awarding attorneys' fees, courts ultimately must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Castillo v. Noodles & Company*, 2016 WL 7451626 *4

7

(N.D. Ill. Dec. 23, 2016), quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). The district court must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigating when the risk of loss still existed." *Castillo*, 2016 WL 7451626 at *4, citing *Sutton*, 504 F.3d at 692. District courts "must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . ." *Castillo*, 2016 WL 7451626 at *4, citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). As described above, Class Counsel had a written contingent fee contract with Plaintiff as the Class Representative providing for a contingent fee equal to 1/3rd of the overall net recovery.

> **1. Class Counsel's Request For One-Third Of The Net Settlement Is The Normal Rate Of Compensation In The Seventh Circuit.**

The attorneys' fee Class Counsel requests is based on the market within the Seventh Circuit. *Castillo*, 2016 WL 7451626 at *4, citing *In re Synthroid Mktg. Litig.*, 264 F.3d at 718 ("when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."). Fees equal to one-third of the common fund are routinely approved in wage and hour class action settlements. For recent cases, see *Castillo*, 2016 WL 7451626 at *5 ($1,000,000 fee was one-third of $3,000,000 total settlement); *McCue*, 2015 WL 4522564 at *3 (awarding Class Counsel fee equal to one-third of Qualified Settlement Fund).

Class Counsel now seeks one-third of the overall recovery, and before initiating litigation, Class Counsel and Beals agreed that Class Counsel would request 1/3rd of any (at that time uncertain) net overall recovery as his fee. [Hunt Declaration, ¶ 17]. In this way, "the Court knows what private plaintiffs 'would have negotiated with their lawyers, had bargaining

occurred at the outset of the case (that is when the risk of loss still existed),' *In re Synthroid*, 264 F.3d at 718, 720, because Plaintiff(s) contracted for Class Counsel to be compensated by the amount Class Counsel now seek(s)." *Castillo*, 2016 WL 7451626 at *4, citing *In re Dairy Farmers of Am., Inc.*, 80 F.Supp.3d 838, 844-45 (N.D. Ill. 2015) ("stating presumption of market-rate reasonableness would have attached if parties had established a fee structure at the outset of the lawsuit.")

As described above, courts regularly agree that "a counsel's fee of 33.3% of the common fund is comfortably within the range typically charged as a contingency fee by plaintiff's lawyers in an FLSA action." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (internal quotation marks omitted) (collecting cases); *see Campbell*, 2012 WL 1424417, at *2 (approving award of one-third settlement plus costs in FLSA collective action). These awards of "attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees [Class Counsel propose should be] awarded by the [Court]." *Taubenfeld*, 415 F.3d at 600.

Class Counsel's requested fee is also within the market rate for common fund class actions within the Seventh Circuit. *See Id.* at 600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *see also Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (awarding one-third of the settlement fund and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery.").

## 2. The Risk of Nonpayment Was Significant.

Class Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Class Counsel faced. At the outset of the representation, Class Counsel took "on a significant degree of risk of nonpayment … " *Castillo*, 2016 WL 7451626 at *5, citing *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Class Counsel took this case on a contingent basis, meaning that there was a substantial risk that his firm would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). As the Seventh Circuit has noted, Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

### C. CLASS COUNSEL'S REQUESTED FEE AWARD IS FAIR AND REASONABLE.

#### 1. The Results and Benefits Conferred Upon The Class Justify The Fee Award.

This Settlement will provide Class Members with a substantial cash payment. The Settlement Agreement provides that Franciscan VNS will pay a settlement amount of $3,650,000.00 to settle all claims against it. [Docket No. 78-1].

The settlement represents significant value given the attendant risks of litigation – even though recovery might be greater if Plaintiff continued to litigate, overcame motions to decertify the class and collective action, succeeded on all claims at the summary judgment stage and/or trial, survived any appeal, and were able to collect.

The Settlement was vigorously negotiated by attorneys for the parties with the help of an experienced mediator. Defendant was well represented by very experienced and skilled counsel. The final settlement was reached as a result of arms-length negotiations.

### 2. Continued Litigation Presented Significant Risks To the Class.

Continued litigation would pose significant risks. While Plaintiff and Class Counsel believed Plaintiff would succeed in her claims, Defendant and its attorneys believed just as strongly in Defendant's ability to successfully defend themselves. Additionally, the parties had a significant dispute over the Plaintiff's ability to recover at all due to the FLSA exemption defense raised by Defendant.

### 3. Class Members Did Not Object to Class Counsel's Request for Fees.

Class Members have already been advised of Class Counsel's request for payment of attorney's fees and the Court's preliminary approval of the Settlement. Class Members had ample opportunity to object before the deadline for objections. *See* FRCP 23(h); The Class Notice informed Class Members that they may object to any part of the Settlement, including the attorneys' fees and costs sought by Class Counsel and no Class Member has objected. [Hunt Declaration, ¶ 22]

### CONCLUSION

For the reasons set forth above, the Plaintiff and Class Counsel respectfully requests that the Court grant its Motion for Final Approval of Class Counsel's Attorney's Fees and Class Representative Payment, and for all other just and proper relief in the premises.

The Law Office of Robert J. Hunt, LLC

/s/Robert J. Hunt
Robert J. Hunt (No. 30686-49)
Robert F. Hunt (No. 7889-84)
1905 South New Market Street, Suite 168
Carmel, IN 46032
T. (317) 743-0614
F. (317) 743-0615

## CERTIFICATE OF SERVICE

I certify that on November 28, 2024, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                THE LAW OFFICE OF ROBERT J. HUNT, LLC

                By /s/ Robert J. Hunt
                    Robert J. Hunt